The appellant, Derrick Dewayne Harper, was found guilty of discharging a firearm into an occupied building. Although he was sentenced to a term of imprisonment, the record is unclear as to the length of his sentence. Evidence at trial tended to show the following. Between 9:00 and 10:00 p.m. on October 14, 1992, Johnny Belton saw a group of approximately 20 young men pass his house. They were carrying guns and he heard them say that they were going to Vivian Hayes's house. Hayes is Belton's aunt. Belton telephoned Hayes's home and warned her son Dexter that the group was approaching. Dexter's brothers, Shawn and Hernandez, and two of Dexter's friends were outside when Belton called, and Dexter went outside to warn them. Kimberly Lewis and her two-year old son Jeremy were inside the house when the group arrived and began to fire their weapons repeatedly into the dwelling; Hernandez Hayes re-entered the house after the shooting began. Dexter Hayes was able to identify the appellant and three others as being among the group of shooters. The appellant's mother and the appellant both testified that he was at home at the time of the shooting.
 I.
The appellant contends that the trial court erred in giving an additional jury instruction after the jury had begun deliberations. He argues that the court's charge on complicity was overly prejudicial because it stated that "you must find beyond a reasonable doubt that on this occasion . . . he either shot into the house, or aiding and abetting was shooting into the house," without again instructing the jury that they could acquit the appellant.
The record reveals that, after beginning deliberations and recessing for lunch,[1] the jury returned to the courtroom with the following question: "If the jury is convinced that the defendant was present with a gun during the incident but not certain he fired the weapon, can he be found guilty?" The trial court responded that the answer to the question as written was "no" but explained that, under the legal theory of complicity, a person could be criminally liable based upon the behavior of somebody else. The court then went on to explain the concept of aiding and abetting. After the jury resumed its deliberations, the court told the appellant's counsel that it understood that the complicity instruction went beyond the original charge but that, "in all candor I did not expect this to be an issue of fact before this jury." Counsel objected, asking for curative instructions and asking the trial court to "recharge the jury on all of the elements of both the charges as in the indictment and the charges that the defendant is entitled to the presumption of innocence, the proof beyond a reasonable doubt, in that the court's charge after jury deliberations of about an hour and in that specific charge without further complete reinstruction is again prejudicial to the defendant." The court overruled the counsel's objection. *Page 362 
In Collins v. State, 611 So.2d 498 (Ala.Cr.App. 1992), this Court held that, if the jury requests additional instructions, the recommended practice is for the trial court, in responding, to remain within the area of the specific request. However, the court may, in its discretion, go further, by doing so, if the jury is not thereby misled to the prejudice of the accused. In addition, if the court gives additional instructions, it must not give undue prominence to the requested instructions.
In light of the question presented by the jury, the trial court clearly was within its discretion in giving the additional instruction. Moreover, there is nothing in the record to indicate that the jury could not properly consider the additional instruction along with the court's original charge. Therefore, the trial court did not abuse its discretion by determining that a complete recharging of the jury was not required.
 II.
The appellant contends that the trial court erred in overruling his motion for a judgment of acquittal because, he says, "[n]one of the witnesses called by the state placed [him] at the scene of the crime." He argues that, if it was not proven beyond a reasonable doubt that he was at the scene of the crime, it cannot reasonably be inferred that he fired a gun into the dwelling.
However, Dexter Hayes testified that he was able to identify four of the persons who fired at his mother's house. He said that when the group of shooters arrived, he saw the appellant, the appellant's brother, Andragust Torrance, and Carleton Adams standing in front of the house at the end of the driveway. He also said that, while he was standing on the porch, he saw the appellant and the appellant's brother shooting, and he specifically identified the appellant's weapon as a handgun. In addition, Johnny Belton testified that the appellant, armed with a handgun, was among the group who passed his house on the night of the shooting. Based on the testimony of these witnesses, the State clearly presented sufficient evidence to support the trial court's overruling of the appellant's motion for a judgment of acquittal.
 III.
The State notes an apparent conflict in the record of this case, in that the case action summary reflects that the appellant was sentenced on February 20, 1996, to 12 years in the penitentiary, while the sentencing transcript reflects that the appellant was sentenced on February 12, 1996, to 15 years. The State further notes that, if the sentencing occurred on February 12, there is a jurisdictional issue because the notice of appeal was not filed until April 1, 1996.[2]
Because of the insufficiency in the record, we must remand this cause to the trial court for clarification. On remand, the trial court is to determine the dates of sentencing and the filing of the notice of appeal, as well as the length of the sentence. A return should be filed with this Court within 45 days of the release of this opinion.
REMANDED WITH INSTRUCTIONS.
All Judges concur.
 On Return to Remand
[1] The record reflects that the jury began deliberations at 10:40 a.m. and, after a lunch recess, returned to the courtroom at 12:29 p.m. with its question. The jury resumed deliberations at 1:32 p.m. and returned at 2:20 p.m. with its verdict.
[2] According to the appellant's docketing statement, both sentencing and the giving of the oral notice of appeal occurred on February 20, 1996, and the written notice of appeal was filed on April 1, 1996.